**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| Charles Milton Hines, Jr., | : | |
|     Petitioner/Defendant, | : | Civil Action No. 11-700-WS |
| v. | : | Criminal No. 10-161-WS-C |
| United States of America, | : | |
|     Respondent. | : | |

## REPORT AND RECOMMENDATION

Petitioner Charles Milton Hines, Jr., a federal prison inmate proceeding *pro se*, has filed a timely motion to vacate, set aside, or correct his sentence and brief in support (Doc. 53), pursuant to 28 U.S.C. § 2255, and, while the United States filed a response in opposition (Doc. 56), Hines failed to file a reply in support of his motion. This action is now before the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). And it is **RECOMMENDED** that Hines's § 2255 petition be **DENIED** and the Court find that Hines is not entitled to a certificate of appealability and, therefore, is not entitled to appeal *in forma pauperis*.

### Background

The conviction the petitioner is currently attacking collaterally is his third for bank robbery. (*See generally* Criminal No. 97-00095-RV and Criminal No. 99-00053-RV.) And the current conviction stems from the April 30, 2010 armed robbery of the Alabama Telco Credit Union in Mobile. (*See generally* Doc. 18, factual resume.)

Hines made his initial appearance before, and was arraigned and ordered detained pretrial by, Magistrate Judge Nelson on August 11, 2010 (*see* Docs. 6-7, 10-13), and Mr. Tim Fleming, a member of the Court's Criminal Justice Act (or "CJA") panel, was appointed to represent Hines (*see* Doc. 9; *see also* Doc. 8). Following the probation office conference, held August 31, 2010, (*see* Doc. 14), a notice of intent to plead guilty to

all counts of the indictment (Doc. 16) was entered, on September 10, 2010.  A change of plea hearing was held before Judge Granade on September 23, 2010 (*see* Doc. 17), at which Hines entered a plea of guilty to all counts in the indictment (*see* Doc. 19), and Hines was sentenced by Chief Judge Steele, to 562 months imprisonment, on January 25, 2011.  (*See* Doc. 29.)[1]

Hines eneterd a notice of appeal (Doc. 30) on February 2, 2011, and Mr. Fleming was appointed to represent him on appeal (*see* Doc. 37).  Hines's sole contention on appeal—that "the district court violated double jeopardy principles by ordering that the 300-month sentence imposed for using a firearm during a crime of violence run consecutive to the 262-month sentence imposed for other crimes"—was determined to be foreclosed by Eleventh Circuit precedent, and the appeal was dismissed.  (Doc. 52, order dismissing appeal, at 3 (citing *United States v. Julian*, 633 F.3d 1250, 1256 (11th Cir. 2011); *United States v. Moore*, 43 F.3d 568 (11th Cir. 1994)).)

<u>Preliminary Issue: Motion to Appoint Counsel</u>

In taking Hines's petition under submission, the undersigned refused his request for appointment of counsel at that early stage, explaining that a prisoner, like Hines, does not have a constitutional right to counsel when mounting a collateral attack on his conviction.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.") (citation omitted); *see also Crawford v. United States*, Nos. 1:07-CR-0089-TWT-1, 1:10-CV-0278-TWT, 2010 WL 1978259, at *1 (N.D. Ga. May 14, 2010) ("In collateral

---

[1]    Relevant excerpts from both hearing are discussed and/or cited in the analysis section of this report and recommendation.

proceedings challenging a conviction, appointment of counsel is necessary only when due process or "the interests of justice" require it.") (citations omitted); *United States v. Hernandez*, No. 05-14051-CR, 2008 WL 4559103, at *1 (S.D. Fla. Oct. 10, 2008) ("Situations where appointment of counsel for § 2255 cases is very rare, and such appointment is typically reserved for truly complex and legally subtle cases.") (quoting *Fernandez-Malave v. United States*, 502 F. Supp. 2d 234, 241 (D.P.R. 2007) (citing, in turn, *United States v. Mala*, 7 F.3d 1058, 1063-64 (1st Cir. 1993))).   After a thorough review of this matter, the undersigned now has determined that the claims presented by Hines, although vexing, are neither "truly complex" nor "legally subtle."   And neither due process nor "the interests of justice" require the appointment of counsel.

While Rule 8(c), Rules Governing § 2255 Proceedings, requires that, "[i]f an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have an attorney appointed under 18 U.S.C. § 3006A[,]" the undersigned has determined, and now **RECOMMENDS**, that a hearing is not warranted.  *Cf. Toomer v. United States*, No. 6:10-cv-1197-Orl-19KRS, 2010 WL 4008764, at *3 (M.D. Fla. Oct. 7, 2010) (noting, "federal courts generally appoint counsel in post-conviction proceedings only after the court determines that the issues presented warrant an evidentiary hearing.") (citation omitted).

Accordingly, Hines's motion for appointment of counsel is **DENIED**.[2]

---

[2]     In a non-capital habeas matter, such as this, a Magistrate Judge possesses the authority to determine whether (and, if so, when) counsel should be appointed for a petitioner. *See, e.g., United States v. Dolliver*, No. CR-04-77-B-W, 2008 WL 1924998, at *1 (D. Me. Apr. 28, 2008) ("When a petitioner seeks relief under § 2255, a United States magistrate judge may appoint counsel when she 'determines that the interests of justice so require.'") (quoting 18 U.S.C. § 3006A(a)(2)(B)); *id.* (noting that, in a non-capital matter, Rule 8(c) authorized the magistrate judge to appoint counsel "at any stage of the proceeding").

<u>Analysis</u>

I.      **Grounds One and Two: Ineffective Assistance of Trial and Appellate Counsel.**

To establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *See generally Strickland v. Washington*, 466 U.S. 668 (1984).  "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."  *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002); *accord Cooper v. Secretary, Dep't of Corrs.*, 646 F.3d 1328, 1351 (11th Cir. 2011).

To succeed on such a claim, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  And "[w]hen analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds."  *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

The two-pronged *Strickland* test is [also] applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Id.* at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial. *Upshaw v. Untied States*, No. 2:07-cv-111-FtM-33DNF, 2008 WL 638261, at *1 (M.D. Fla. Mar. 5, 2008) (citing *Hill*, 474 U.S. at 59).

*Rosado v. Secretary, Dep't of Corrs.*, No. 8:09–cv–02518–EAK–EAJ, 2010 WL 2976886, at *4 (M.D. Fla. July 20, 2010) (some citations modified); *see also Missouri v. Frye*, ___ U.S. ____, 132 S. Ct. 1399, 1409 (2012) (affirming that that decision "[did] nothing to alter the standard laid out in *Hill*. In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'") (quoting *Hill*, 474 U.S. at 59); *id.* (further noting that "*Hill* was correctly decided and applies in the context in which it arose[,]" which is the same context the Court faces with this habeas petition).

Finally, "vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim." *Rosado*, 2010 WL 2976886, at *4 (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)).

###### a. Trial counsel failed "to request . . . a competency [determination]."

Hines is making sweeping arguments as to his counsel's alleged deficiency in failing to assert that Hines was not competent to enter a guilty plea.

First, he states that, "prior to the entering of the plea agreement," he "explained to his counsel [that] he was hearing voices and could not clearly understand what was transpiring," leading Hines, he claims, to request that his attorney "file for a mental evaluation on his behalf."  (Doc. 53 at 18.)  Hines next asserts that he was not taking his "prescribed psychotropic prescriptions prior to the commission of the bank robbery" and that his counsel "was aware [that Hines] had an extensive mental illness background and had been treated during his previous federal incarceration." (*Id.* at 18-19.)  Hines further asserts, "he did not understand any of the proceedings which transpired during the time period of entering of the guilty plea through-out [sic] the sentencing phase.  Not until arrival at the federal institution and receiving medications for his mental illnesses did he begin to understand these circumstances." (*Id.* at 19.) Hines next argues that his trial counsel was ineffective for failing "to bring to the attention [of the Court] his low mental functioning," which, he asserts, prevented him from understanding his Miranda rights, his right to a suppression hearing, and prevented him from knowingly and voluntarily entering a guilty plea.  (*Id.* at 20.)[3]

---

[3]     As the United States points out, "[a] defendant's [unconditional] plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings."  (Doc. 56 at 14 n.3 (quoting *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997), which noted "[t]he right to a speedy trial has repeatedly been held to be non-jurisdictional, both before and after the passage of the Speedy

Along the same lines, he also asserts that his dysfunctional family history, his history of depression and drug abuse, and that his learning disability should have been brought to the Court's attention and/or caused his counsel to move for an examination of his competency.  (*See id.*)

In *Dusky v. United States*, 362 U.S. 402 (1960), the Supreme Court established the standard for determining a defendant's competency to stand trial in federal court: "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him[,]" *id.* at 402.  "In the context of a federal habeas case brought under 28 U.S.C. § 2255, [the former Fifth Circuit established] that the *Dusky* test of mental competency also applies to entering a plea in a federal criminal

---

Trial Act." (quoting *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984)))).)  Likewise, an alleged violation of one's rights under *Miranda* and/or right to a suppression hearing, which Hines appears to assert on collateral attack (*see* Doc. 53 at 20 & 33 (paragraph 3 of Hines's affidavit)), are also waived, as non-jurisdictional defects, upon the entry of an unconditional plea of guilty, made knowingly, voluntarily, and with the benefit of counsel.  *See, e.g., United States v. Tucker*, No. 11–2641, 2013 WL 264567, at *3 (3d Cir. Jan. 24, 2013) (noting that the defendant's suppression motion was "foreclosed from appellate review by [his] guilty plea[,]" remarking: "A defendant's unconditional, knowing and voluntary guilty plea acts as a waiver of non jurisdictional defects, including waiver of pre-trial claims that police illegally seized evidence or elicited inculpatory testimony without first administering Miranda warnings.") (internal citations omitted).  Thus, because the undersigned finds that Hines's counsel did not provide ineffective assistance with regard to the guilty plea, all Hines's non-jurisdictional claims—including any violation of *Miranda* rights and the right to a suppression hearing—have been waived.  *Cf. Stewart v. Tucker*, No. 3:09cv452/LAC/EMT, 2011 WL 5983944, at *13 (N.D. Fla. Nov. 16, 2011) ("In the instant case, Petitioner does not challenge the effectiveness of the assistance he received from counsel in deciding to plead guilty, nor does he otherwise allege his plea not was not knowingly and voluntarily entered.  Therefore, he waived his constitutional challenge to defense counsel's failure to investigate and present Tre Holbrook as a witness at the suppression hearing, and counsel's failure to depose law enforcement officers prior to the suppression hearing.") (collecting cases), *report & recommendation adopted*, 2011 WL 5981003 (N.D. Fla. Nov. 28, 2011).

case." *Bolius v. Wainwright*, 597 F.2d 986, 988 n.3 (5th Cir. 1979) (citing *Malinauskas v. United States*, 505 F.2d 649, 650 (5th Cir. 1974)).[4]

> The law is clear that it is a fundamental requirement of Due Process that defendants be mentally competent upon entering a guilty plea or proceeding to trial. . . . [T]he mere presence of mental illness or other mental disability at the time of trial does not necessarily mean that a defendant is incompetent under the *Dusky* test. The mental illness or disability must have been so debilitating that the defendant was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings.

*Onate-Sosa v. United States*, Nos. 09–21555–Civ–HUCK; 08–20164–Cr–HUCK, 2011 WL 1878211, at *14 (S.D. Fla. Jan. 13, 2011) (citing *Bolius*, 597 F.2d at 990), *report & recommendation adopted*, 2011 WL 1883167 (S.D. Fla. May 17, 2011).

Furthermore, to meet the burden under *Strickland* to "demonstrate prejudice from his lawyer's failure to have him evaluated, [Hines] has to show that there was at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to [enter a plea of guilty]." *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988) (citing *Adams v. Wainwright*, 764 F.2d 1356, 1367 (11th Cir. 1985)).

Hines has failed to show that his trial counsel was ineffective for failing to have him examined to ascertain his mental competency. First, "[r]elevant indicia of a defendant's incompetence include a defendant's irrational behavior, courtroom demeanor, or medical opinion." *Onate-Sosa*, 2011 WL 1878211, at *15 (citing *Drope v. Missouri*, 420 U.S. 162 (1975)). At the guilty plea hearing, held September 23, 2010, in response to the Court's question regarding treatment for mental illness or addiction, Hines identified that he was currently undergoing treatment for depression, but indicated that this did not affect his ability to understand what he "was doing here

---

[4]    The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981. *See id.* at 1209.

today"—entering a guilty plea.  (*See* Doc. 42, guilty plea docket tr., at 5:21-7:9; 8:3-13.)[5]

Thus, the only indicia of Hines's incompetence leading up to, and during, the guilty

---

[5]      Hines was one of three defendants to enter pleas of guilty before Judge Granade on September 23, 2010.  Hines's relevant testimony is excerpted below:

THE COURT:  All right. Have any of you been treated recently for any mental illness or addiction to any sort of drug?

.      .      .

DEFENDANT HINES:  I have.

.      .      .

THE COURT:  And Mr. Hines, what did you say? You were currently undergoing treatment?

DEFENDANT HINES:  Depression.

THE COURT:  What kind?

DEFENDANT HINES:  I think it was bipolar depression or whatever.

THE COURT:  All right.  And does that affect your ability to understand what you're doing here today?

DEFENDANT HINES:  No, ma'am.

THE COURT:  Mr. Fleming, do you have any reason to believe that's not so?

MR. FLEMING:  I don't have any reason.

.      .      .

THE COURT: . . . Do you take any medication?

.      .      .

THE COURT: And you, Mr. Hines.

DEFENDANT HINES:  Yes, ma'am.

THE COURT:  Are you taking it for your mental condition?

DEFENDANT HINES:  For depression I take Remeron.

THE COURT:  All right.  Does that affect your ability to understand what you're doing here today?

DEFENDANT HINES:  No, ma'am.

plea hearing are Hines's current self-serving, conclusory allegations, which are rebutted

by his counsel's sworn affidavit, in which Mr. Fleming states that

> Hines never indicated that he heard voices in his head nor did he request
> a mental evaluation.  If he had, I would have filed for one.  Also, it was
> my impression and understanding that Mr. Hines understood every
> aspect of his guilty-plea and sentencing process.  He never told me that he
> did not understand his Miranda Rights and said that he understood that
> he waived those rights prior to making his statement to the police.

(Doc. 56-2 at 2.)  *Compare id., with Onate-Sosa*, 2011 WL 1878211, at *15 ("Because it is

often defense counsel who is in the best position to discover whether the defendant's

competency is questionable, failure of defense counsel to raise competency is

compelling evidence that the defendant's competency was not really in doubt.") (citing

*Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996); *Adams*, 764 F.2d at 1360); *see also*

*Onate-Sosa*, 2011 WL 1878211, at *15 (finding no right to habeas relief where allegations

that a petitioner "was suffering from schizophrenia and/or a bipolar disorder, and the

like which prevented him from assisting his attorney [were] wholly conclusory with no

substantiation in the record other than the movant's own self-serving statements");

*Thomas v. Snyder*, No. CIV. A. 98–234–GMS, 2001 WL 1297812, at *6 (D. Del. Oct. 3, 2001)

("[D]uring his plea colloquy, Thomas stated that he understood the charges and the

terms of his agreement.  Thomas' rational and coherent answers which were transcribed

during his plea and sentencing hearings do not demonstrate that he lacked an ability to

consult with his lawyer with a reasonable degree of rational understanding or that he

lacked a rational and factual understanding of the proceedings.") (citing *Alexander*, 841

F .2d at 375).

Further, taking Hines's alleged "extensive mental illness background[,]"

requiring treatment  "during his previous federal incarceration[,]" as true, "a history of

mental problems[, alone,] fails to demonstrate how these past problems affected [a

defendant's] ability to consult with his lawyer or understand the proceedings against him[, and does] not demonstrate[] a reasonable probability that a psychological evaluation would have revealed that he was[, at that time,] incompetent . . . ." *Alexander*, 841 F.2d at 375.   And, given that Hines "was lucid and candid when addressing the court" during the guilty plea hearing, even if his counsel had moved for a competency examination, "no showing has been made here that such an exam was warranted, nor that the court would have granted the request.   Consequently, no prejudice has been established arising from counsel's failure to pursue this claim." *Onate-Sosa*, 2011 WL 1878211, at *15 (concluding that the petitioner was "therefore entitled to no relief on [a similar] claim").

> **b.   Trial counsel "failed to adequately investigate and prepare defense"**

Without attempting to offer any true evidence or concrete examples, Hines contends that his counsel "failed to properly and diligently investigate [his] case" by, among other things, "questioning witnesses, visiting the crime scene and other locations, [and] examining physical evidence."   (Doc. 53 at 21.)   In response, Mr. Fleming states that after he reviewed the discovery with Hines, including the videotaped confession, and after Hines (1) "confirm[ed] the truthfulness and accuracy of the contents of witness statements, photographs, and videos," and (2) verified that a weapon was discharged during the robbery, counsel "concluded that there was no need to physically visit the scene.   Mr. Hines had decided to plead guilty.   Had he decided to go to trial," counsel asserts, he "would have investigated in further detail the scene and witness statements."   (Doc. 56-3 at 2.)

In the context of a habeas petitioner asserting a failure to adequately investigate claim after proceeding to trial, the Eleventh Circuit has observed:

Counsel has a constitutional, independent duty to investigate and prepare a defense strategy prior to trial.  However, this duty does not necessarily require counsel to investigate each and every evidentiary lead.  Yet, the decision to restrict or limit an investigation must flow from an informed judgment.  Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  That is, counsel has a duty to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Therefore, in assessing the reasonableness of an attorney's investigation, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.

*Williams v. Allen*, 598 F.3d 778, 792-93 (11th Cir. 2010) (§ 2254) (alterations to original; internal citations and quotation marks omitted).

And, in *Hill*, the Supreme Court specifically addressed the current scenario, whether counsel's alleged failure to investigate "'prejudiced' the defendant by causing him to plead guilty rather than to go to trial[,]" 474 U.S. at 59, setting out the standard as "the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea[, which], in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial[,]" *id.*

Hines's conclusory presentation of this issue has not met his burden to show that, if his counsel had conducted a further investigation into the facts of this matter, such an investigation would have revealed evidence to convince his counsel to change a recommendation that Hines plead guilty.  *See, e.g., Freeman v. United States*, Criminal Indictment No. 1:06–CR–0185–TWT–JFK–1; Civil File No. 1:09–CV–2143–TWT–JFK, 2011 WL 2680494, at *5 (N.D. Ga. June 10, 2011) ("Although Movant states counsel should have investigated, prepared, and interviewed witnesses, her claim is conclusory, she makes no concrete showing as to what further investigation would have revealed,

12

and she does not demonstrate that there is a reasonable probability that such activity by counsel would have changed counsel's advice or her decision to plead guilty."),*report & recommendation adopted*, 2011 WL 2680509 (N.D. Ga. July 7, 2011); *cf. Jefferson v. Crosby*, No. 4:04-cv-00416-MP-EMT, 2008 WL 681018, at *16 (N.D. Fla. Mar. 6, 2008) ("[T]he record reveals that counsel fulfilled his responsibility to investigate and evaluate Petitioner's options in the course of the legal proceedings and to advise Petitioner as to the merits of each.") (citing, *inter alia*, *Wofford*, 748 F.2d at 1508 (noting counsel's "lesser duty to a client who pleads guilty," concerning, among other things, conducting an investigation)).

### c.  Trial counsel "failed to procure/retain Expert service"

Hines asserts that, after he requested counsel to do so, his counsel failed to retain experts "in preparation of the mitigation phase" (sentencing); such experts, according to Hines, could have "bolstered the defense."  (Doc. 53 at 22.)  Hines also contends that the testimony of "an independent mental health expert" would have assisted him in "mount[ing] a credible challenge to [the] Government's prior mental assessments from a mental evaluation conducted years earlier."  (*Id.* at 23.)

If accurate, Hines's contentions are, again, completely conclusory.  First, he fails to identify what type of expert could have assisted him at sentencing, what kind of testimony that expert would have offered, and—assuming Hines had—he has not even attempted to show (1) that the Court would have allowed such an expert to testify (after finding the expert reliable and his or her testimony relevant), and (2) that the Court, after considering this expert's testimony, would have reached a different result on sentencing.

For example, in *Coleman v. Bradshaw*, No. 3:03–cv–299, 2012 WL 6002469 (S.D. Ohio Nov. 30, 2012), a capital habeas case, the Magistrate Judge rejected an argument

that counsel was ineffective for "fail[ing] to hire a cultural expert to provide testimony regarding the unique social and cultural factors that face African–American men"— testimony claimant believed "could have provided insight to the jury as to how someone like [himself], raised in a stable and loving family, could turn to a life of dealing drugs[,]" which, the claimant contended, would have made it "reasonably probable that at least one juror would have voted to impose a sentence of life, rather than death." *Id.* at *59. The Magistrate Judge found that the petitioner there, who obviously went much further to develop his argument than Hines does, failed "to offer support as to what this expert may have testified to," and, "[e]ven assuming an expert on this matter had been presented, this presumes that the cultural expert's testimony would have been deemed reliable after undergoing a *Daubert* analysis and that the testimony would have relevant . . . ." *Id.*

> "The decision of what mitigating evidence to present during the penalty phase of a ***capital case*** is generally a matter of trial strategy." *Hill v. Mitchell*, 400 F.3d 308, 331 (6th Cir. 2005). "[T]he existence of alternative or additional mitigation theories generally does not establish ineffective assistance of counsel." *Phillips v. Bradshaw*, 607 F.3d 199, 207 (6th Cir. 2010). Attorneys are not expected to present every potential mitigation theory. *Fears v. Bagley*, 462 Fed. App'x 565, 576 (6th Cir. 2012).

*Id.* (emphasis added).

Second, as Mr. Fleming points out in his affidavit (*see* Doc. 56-2 at 2), and as pointed out previously, Hines gave his counsel no reason to seek "an independent mental health expert." Although Hines had a history of mental health treatment, he gave every indication that he was lucid and candid leading up to, and at, the guilty plea hearing. *See, e.g., Chades v. Lattimore*, No. ED CV 07-1668 GHK (FMO), 2009 WL 657006, at *18 (C.D. Cal. Mar. 10, 2009) (collecting cases for the proposition that absent an objective indication that a defendant was suffering from a mental illness, his or her counsel cannot be deemed ineffective for failing to "pursue [that] avenue").

   **d.** **Trial counsel failed "to properly explain sentence exposure, U.S.S.G., or seek Plea-negotiations"**

Hines contends that his counsel failed to inform him that "he would get 562 months in prison if he entered a[n] open plea to a four[-]count indictment[,]" asserting further, that his counsel failed to "fully apprise" him "as to the Sentencing Guidelines or the affect of consecutive sentences." (Doc. 53 at 23; *see also id.* at 33, Hines's affidavit, ¶ 2 ("I failed to understand at the time the consequences of entering this plea.").)

These assertions appear to be factually false. First, they are contradicted by his counsel's affidavit, in which Mr. Fleming informs the Court that "[t]his is simply not true. We did go over the sentencing implications almost every time we conferred (at least 4 times during the process)." (Doc. 56-2 at 3.) Hines contentions are, moreover, as counsel points out, belied by the report on probation office conference (Doc. 14), which documents that United States Probation Officer H. Morris Northcutt, Jr. met with Hines, his counsel, and the Assistant United States Attorney prosecuting this matter on the afternoon of August 31, 2010 (*see id.*). The report indicates that Hines could be classified as a career offender and armed career criminal based on his three previous felony convictions for bank robbery, and, if he were determined to be an armed career criminal, he would be facing a guidelines range of 262 to 327 months. (*See id.* at 7.) The report also indicates that conviction on Count II carried a mandatory consecutive 25-year (or 300-month) custody sentence. (*See id.*) Together, this yields a range of 562 to 627 months. Hines was informed of all this, again, during the plea colloquy:

   THE COURT: All right. Mr. Hines, the maximum penalty the Court could impose upon conviction of the offenses to which you're pleading guilty -- and I'm not sure that I have those in front of me. Ms. Griffin, would you state those for the record, please?

   MS. GRIFFIN: Your Honor, as to count one, the armed bank robbery, the penalty is 25 years, up to 25 years, $250,000 fine, five years of supervised release, and a special assessment of $100. As to count two, the

924(c) count, there is a 25-year consecutive sentence, five years of SRT, a special assessment of $100.

As to count three, the sawed-off rifle count, there is a 10-year maximum penalty, a $250,000 fine, supervised release of three years, and $100 special assessment.  As to count four, the felon in possession count, because we believe he is an armed career criminal, there is a minimum mandatory 15-year sentence up to life without parole, a $250,000 fine, and a potential for three years of supervised release plus the $100 special assessment.

THE COURT:  All right. Mr. Hines, do you understand all of those possible maximum penalties on each of those counts?

DEFENDANT HINES:  Yes, ma'am.

THE COURT: And you understand that count two, that would be 25 years minimum consecutive to what you get on count one?

DEFENDANT HINES:  Yes, ma'am.

THE COURT:  And on count four it would be a minimum 10 years to life, which would also be consecutive; is that right?

MS. GRIFFIN:  Your Honor, as to count four it would be 15 years.

THE COURT:  Oh, 15 years to life would be consecutive as well. Do you understand that?

DEFENDANT HINES:  Yes, ma'am.

(Doc. 42 at 13:13-14:22.)

Hines's counsel further provides that, according to his recollection, "the Government's position was that they would go to trial on any count to which [Hines] did not plead guilty.  No promises of reward, departure or other benefit were offered by the Government."  (Doc. 56-2 at 2.)

This factual record demonstrates that Hines was fully aware of the sentence he faced by entering a guilty plea, and shows "he cannot prove that he was prejudiced by counsel's alleged failure to advise him of this fact."  *United States v. Smith*, Civil Action No. 11–00523–CB; Criminal No. 05–00231–CB, 2012 WL 4794637, at *5 (S.D. Ala. Oct. 9,

2012) (rejecting a similar argument—"that counsel was constitutionally ineffective because she failed to inform him of the mandatory minimum sentence he faced as to Count 6. Counsel's failure to provide accurate advice about the sentencing ramifications of a guilty plea could amount to unreasonable performance"—because the petitioner's contention was also "contradicted by the record"; in particular, the probation office conference report).

   e.   **Trial counsel failed "to [file a] motion for a downward departure or otherwise argue for a reduction in sentence"**

This one sentence "sub-claim" is simply false, and is due to be rejected as such. Hines's counsel filed a position regarding sentencing factors (Doc. 24) on January 17, 2011.  In that filing, in addition to arguing that Hines "would suffer Double Jeopardy if [he was] sentenced to consecutive terms of imprisonment under counts 1 and 2 and 4 of the indictment" (*id.* at 1), counsel specifically requested a downward departure based on several grounds, including that Hines "has suffered from mental/psychological disorders during the course of his lifetime" (*id.* at 2-3).  His counsel further advocated that Hines provided substantial assistance to the government and that Hines deserved consideration under § 3553.  (*See id.* at 3.)  Mr. Fleming also advanced these objections at the sentencing hearing before Chief Judge Steele on January 25, 2011.  (*See* Doc. 45, hearing tr., at 3:12-4:7; 5:13-6:13; 9:5-11:14; 13:6-8.)

   f.   **Trial counsel "nor the district court explained the full consequence of [Hines's] plea, because the district court never inquired whether Hines understood[, first,] his constitutional rights [ ] summarized in Rule 11 and[, second,] that his plea of guilty resulted in a waiver of a jury trial as required by Rule 11(c)(4)"**

This ground appears, at least somewhat, related to Hines's earlier-made competency argument.  In essence, he asserts that, "[b]ecause of [his] mental condition[,

] he did not understand the proceedings nor the waiver of his appellate/ . . . § 2255 collateral review rights." (Doc. 53 at 24.)

First, any claim that the Court committed error has been procedurally defaulted. "A defendant who fails to object at the trial court level to error he believes the court has committed or fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under 28 U.S.C. § 2255 absent a showing of cause and prejudice or a fundamental miscarriage of justice," *Genge v. United States*, 279 Fed. App'x 897, 898 (11th Cir. May 30, 2008) (per curiam) (citing *United States v. Frady*, 456 U.S. 152, 166-68 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)), showings that Hines does not even attempt to make.[6]

As to the guilty-plea colloquy, courts "strongly presume that the defendant's statements at the guilty-plea colloquy were truthful, including his admission of guilt and his representation that he understood the consequences of his plea." *United States v. Baxley*, 402 Fed. App'x 461, 462 (11th Cir. Nov. 8, 2010) (per curiam) (recognizing this strong presumption in the context of direct appeal) (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)); *see also McCulloch v. United States*, Nos. CV410–003; CR408–045, 2011 WL 1084864, at *5 (S.D. Ga. Feb. 17, 2011) (observing same in the context of a collateral attack), *report & recommendation adopted*, 2011 WL 996785 (S.D. Ga. Mar. 21, 2011). And, as the court in *McCulloch* observed, courts reach this presumption "because of the elaborate procedures [they] undertake to head off [ ] claims [related to Rule 11]:

> The district court must "conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Hernandez–Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). This general obligation requires

---

[6]    This is further discussed *infra*. *See* § II (regarding Hines's ineffective guilty plea argument made outside the cloak of an ineffective-assistance-of-counsel claim).

the court to address three core concerns underlying Rule 11: (1) that the guilty plea be free from coercion; (2) that the defendant understand the charges against him; and (3) that the defendant be aware of the direct consequences of his guilty plea.  Rule 11 directs specifically that the court inform the defendant of, and make sure the defendant understands, certain matters.  *See* FED. R. CRIM. P. 11(b)(1)(A)-(N).

*Id.* (quoting *United States v. Jackson*, 398 Fed. App'x 451, 452 (11th Cir. Sept. 30, 2010) (per curiam)).  But, significantly, the Eleventh Circuit will uphold "plea colloquies that fail to address an item expressly required by Rule 11 so long as the overall plea colloquy adequately addresses the[] three core concerns."  *United States v. Monroe*, 353 F.3d 1346, 1354 (11th Cir. 2003) (collecting examples); *see also Hernandez-Fraire*, 208 F.3d at 950 ("Generally, this circuit will uphold a plea colloquy that technically violates Rule 11, but adequately addresses the three core concerns.") (citation omitted).

During the guilty-plea colloquy in this case, however, Judge Granade not only addressed the three core concerns, but she also informed Hines of each "item expressly required by Rule 11" applicable to him and assured his understanding as to each.[7] (*Compare* FED. R. CRIM. P. 11(b)(1)(A), *with* Doc. 42 at 4:19-25; *compare* FED. R. CRIM. P. 11(b)(1)(B)-(E), *with* Doc. 42 at 17:14-18:9; *compare* FED. R. CRIM. P. 11(b)(1)(F), *with* Doc.

---

[7]        In contrast, during the guilty-plea colloquy in *Hernandez-Fraire*, the court

failed to inform Hernandez-Fraire of (1) his right to plead not guilty and to maintain or persist in that plea, (2) his right to the assistance of counsel at trial, (3) his right to confront and cross-examine adverse witnesses at trial, and (4) his right against compelled self-incrimination.  208 F.3d at 946.  [The Eleventh Circuit] in *Hernandez-Fraire* also emphasized that the defendant expressed confusion and told the district court, "I really don't know about this plea because I don't know what my rights are."  *Id.* at 948.  The Rule 11 error in *Hernandez-Fraire* constituted an almost total failure to address "the third core concern of Rule 11," that the defendant know and understand the consequences of his guilty plea.  *Id.* at 950-51.  The district court not only failed to tell the defendant about these various rights, but also failed to tell the defendant that he waived these rights by entering a guilty plea.  Moreover, in *Hernandez-Fraire*, the defendant even told the district court that he did not know what his rights were.

*Monroe*, 353 F.3d at 1355-56.

42 at 18:10-17; *compare* FED. R. CRIM. P. 11(b)(1)(G), *with* Doc. 42 at 20:7-22:14; *compare*

FED. R. CRIM. P. 11(b)(1)(H)-(L), *with* Doc. 42 at 13:13-15:3; *compare* FED. R. CRIM. P.

11(b)(1)(M), *with* Doc. 42 at 15:4-16:18.)  As such, this ground for relief is also meritless.[8]

> **g.** **Trial counsel "coerced [Hines] into signing and accept[ing ] a[n] open plea agreement in violation of his Sixth Amendment Rights"**

Hines contends that his counsel unlawfully induced his guilty plea by

"coerc[ing] him into acceptance of all conditions contained within the open plea[,]"

aware that Hines "suffers from mental illness" and that Hines was not, at that time, on

medication.    (Doc. 53 at 26.)    Hines contends, moreover, that his counsel "took

advantage [of him] by threaten[ing] and guarantee[ing him that,] if he did not sign[,

Hines] would receive a **LIFE** sentence." (*Id.* (emphasis in original)).)  His counsel further

coerced him, Hines alleges, by coaching him through a script, telling Hines "to say 'no'

when ask[ed whether] anyone threaten[ed] or coerce[d him] into entering [a] plea." (*Id.*;

*see also id.* at 33, Hines's affidavit, ¶ 2 ("During these proceedings Mr. Fleming advised

me that I would not receive more than 300 months in prison.  Mr. Fleming coerced me

into acceptance of the plea, I would have elected to go to trial.  I failed to understand at

the time the consequences of entering this plea.").)

In response to Hines's allegations, Mr. Fleming insists they are "[n]ot true[,]" and

informs the Court that, with regard to the allegedly coerced guilty plea, he told Hines

that if he wanted to proceed to trial, "we will go to trial[,]" and, with regard to allegedly

coaching Hines through a script, "I told Mr. Hines to answer truthfully.  I do not give

---

[8]    Rule 11(b)(1)(N), pertaining to "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence," is not applicable because Hines did not enter a plea agreement with the government. (*See, e.g.*, Doc. 42 at 10:15-17 (Q: "Mr. Hines, do you have any agreements at all with the United States Government concerning your case?  [A:] No, ma'am.").)

clients a 'script' of any kind.  I do tell them that if they insist on their innocence during the guilty plea, the Court will not accept their plea, and the case will more forward to trial."  (Doc. 56-2 at 3.)

Hines's bald assertions, which clearly fly in the face of what he represented to the Court during the guilt plea hearing,[9] *see Baxley*, 402 Fed. App'x at 462 (courts "strongly presume that the defendant's statements at the guilty-plea colloquy were truthful"), cannot be used to prove the prejudice prong of *Strickland* (a reasonable probability exists that but for any errors by counsel, Hines would not have pleaded guilty and would have insisted on going to trial).  *See United States v. Wilson*, 337 Fed. App'x 747, 749 (10th Cir. June 30, 2009) (in an action in which a defendant's allegations of ineffectiveness of counsel, likes Hines's, "were vague, especially compared to the overwhelming evidence against [him,]" denying certificate of appealability and affirming district court's conclusion "that Wilson's allegation that his guilty plea was coerced by his trial counsel was inconsistent with the record of the proceedings, and that Wilson had therefore failed to establish that his counsel was ineffective or that Wilson was prejudiced in his defense") (citing *Strickland*); *United States v. Robinson*, 64 F.3d 403, 405 (8th Cir. Aug. 28, 1995) ("As to Robinson's ineffective assistance claim, we

---

[9]      The  Court  asked  Hines  whether  he  was  "fully  satisfied  with  the  counsel, representation, and advice given to [him] . . . by [his] attorney," and Hines answered that he was.  (Doc. 42 at 9:4-9.)  The Court also asked Hines whether "anybody [had] made any . . . promises or assurances to you of any kind in an effort to induce [him] to plead guilty . . . [,]" and Hines answered no.  (*Id.* at 10:18-23.)  The Court informed Hines that it would "not be able to determine the advisory guideline range for [his] case until after the probation office [ ] prepared a presentence report and [he] and the government [presented any] challenge [to] the reported facts and the application of the guidelines recommended by the probation office."  (*Id.* at 15:12-17.)  The Court further informed Hines "the guideline range determined by the Court may be different from any estimate that your attorney or anybody else might have given [him]." (*Id.* at 15:18-20.)  Hines acknowledged he understood all of this.  (*See id.* at 15:23; *see also id.* at 15:24-16:18 (also informing Hines that the guidelines also provide for upward and downward departures, that the guidelines are advisory and do not necessarily control the sentence imposed, and that there is no parole in the federal system; Hines, again, acknowledged that he understood all of this).)

agree with the district court that his allegations of coercion are vague and conclusory and do not warrant an evidentiary hearing."); *see also Patterson v. United States*, Nos. 3:09–CV–1677–L; 3:07–CR–077–L, 2011 WL 6090249, at *2 (N.D. Tex. Nov. 16, 2011) ("Petitioner claims that counsel allowed him to enter into a coerced guilty plea. However, Petitioner fails to cite any facts that show how his plea was coerced. Conclusory allegations are insufficient to prove claims of ineffective assistance of counsel.  Prisoners challenging their guilty pleas on collateral review must overcome a strong presumption of verity accorded solemn declarations made in open court. Prisoners must also overcome the presumption of regularity and great weight accorded court documents.") (internal citations and quotation marks omitted), *report & recommendation adopted*, 2011 WL 6219567 (N.D. Tex. Dec. 7, 2011); *McAffee v. United States*, No. 8:06CV1796 T27MAP; 8:04CR102 T27MAP, 2006 WL 3747329, at *3 (M.D. Fla. Dec. 18, 2006) ("Given the strong presumption of verity accorded Petitioner's sworn statements during his plea hearing, his conclusory allegation of ineffective assistance of counsel, unsupported by specifics, is subject to summary dismissal, as are his contentions that are wholly incredible in the face of the record.  Accordingly, given Petitioner's sworn statements during the plea colloquy and in his plea agreement that he was pleading guilty freely and voluntarily without threats, force, intimidation, or coercion of any kind, Petitioner's allegations that his attorney influenced him to agree to the appeal waiver are refuted by the record.  His claim of ineffective assistance is without merit.") (internal citations and quotation marks omitted); *cf. United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").[10]

------------

[10]     The undersigned further observes that Hines is entitled to no relief under any

### h. Trial counsel failed "failed to Object/Challenge the PSR effectively"

Hines's final ground regarding the alleged ineffectiveness of his trial counsel is that counsel should have objected to "the government[']s rendition of facts and [the] sentencing guidelines calculation . . . ." (Doc. 53 at 28.)  As stated above, counsel filed a position regarding sentencing factors (Doc. 24), and advocated for Hines's position vis-à-vis the presentence report at the sentencing hearing.   Accordingly, for the same reasons given above, *see supra* § I.e, this ground is also due to be denied.

### i. Appellate counsel

Hines initially contends that, since he "does not have access to his entire original file[, containing] all of the motions and the court's decisions, he can not [sic] be expected to allege with particularity[ ] the specific issues that should have been appealed[,] but, he also contends, his appellate counsel, also Mr. Fleming, "failed to brief and argue to [the court of appeals] numerous[—but unspecified—]issues that were properly reflected in the records." (Doc. 53 at 28.)  Citing a decision by the Seventh Circuit, *United States v.*

---

theory that his counsel provided ineffective assistance by "advis[ing him] that [he] would receive more than 300 months in prison." (Doc. 53 at 33, Hines's affidavit, ¶ 2).  If true, Hines "is not entitled to relief on a claim of ineffective assistance of counsel for counsel's failure to adequately predict [his] sentencing guideline range.  An erroneous prediction of a sentence by counsel does not render a guilty plea involuntary." *Reid v United States*, Nos. 5:09–CR–00029 (CAR); 5:11–CV–90109 (CAR), 2012 WL 6800793, at *5 (M.D. Ga. Aug. 24, 2012) (citing *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir. 1975)), *report & recommendation adopted*, 2013 WL 80210 (M.D. Ga. Jan. 7, 2013).  "Where, as here, a defendant 'pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel.'  Moreover, the Eleventh Circuit has made it clear that counsel's failure to adequately predict a defendant's ultimate sentence does not amount to prejudice when the defendant is properly warned of his minimum and maximum penalties by the court.  *Id.* (quoting *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984); citing *United States v. Pease*, 240 F.3d 938, 941–42 (11th Cir. 2001)).

*Smith*, 250 F.3d 1073 (7th Cir. 2001), Hines asserts, further, that he was "entitled to a 'kitchen sink brief' that covered every issue presented [at] trial." (Doc. 53 at 28-29.)[11]

Boiled down, Hines contends that Mr. Fleming, who states that he "made the appellate arguments that [he] felt were most strongly supported by the record" (Doc. 56-2 at 3), was ineffective because he failed to raise on appeal grounds that Hines himself cannot now even identify to this Court.  First, such a contention utterly fails to show that Hines was prejudiced by any alleged ineffectiveness—"[c]ounsel's performance will be deemed prejudicial if we find that 'the[—,here, unidentified—]neglected claim would have a reasonable probability of success on appeal.'" *Philmore v. McNeil*, 575 F.3d 1251, 1265 (11th Cir. 2009) (quoting *Heath v. Jones*, 941 F.2d 1126, 1132

---

[11]    While not necessary to resolve this ground for alleged ineffective assistance, it should be noted that the very authority Hines provides undercuts his assertion.  In her opinion, dissenting from the decision of the Seventh Circuit to deny rehearing *en banc*, in which Hines's "kitchen sink" reference appears, Judge Diane P. Wood expressed her "fear" that the panel decision, *United States v. Smith*, 241 F.3d 546 (7th Cir. 2001), would require exactly what Hines is advocating for here.  She characterized that decision as addressing and resolving

> a question of general importance for a recurring issue in collateral attacks on criminal convictions: how do the rules of procedural default operate when a later Supreme Court decision changes the legal landscape faced by a defendant at the time of trial?  According to the panel, even if there is no way that a defendant, or more to the point, defense counsel, could have anticipated the later legal ruling, the defendant cannot raise the point in a later collateral attack.

250 F.3d at 1074-75.  And while Judge Wood found this approach concerning from many perspectives, "from a pragmatic standpoint," she feared, the decision "imposed an impossible burden on defense counsel."  *Id.* at 1075:

> I fear that the panel's rule will create an ***administrative nightmare*** not only for defense counsel trying to represent their clients responsibly, but also for the district courts and this court.  After this, defense counsel will have no choice but to file ***one "kitchen sink" brief after another, raising even the most fanciful defenses that could be imagined*** based on long-term logical implications from existing precedents.  The Supreme Court may never go down most of those paths, but that will not matter, because otherwise the defendant will find him or herself staring at a procedural default that cannot be overcome for good cause. I have the deepest concern about the consequences of this approach for the courts.

*Id.* at 1077 (emphasis added).

(11th Cir. 1991)).  Where a petitioner "does not identify nor [can] the Court discern any claims[—or any other claims—]counsel should have raised[,] which would have had even a small chance of success on appeal[,]" even if counsel's conduct falls "below the minimum standards," there can be no showing that counsel was "constitutionally ineffective and habeas relief [should be] denied."  *Walls v. Romanowski*, No. 2:06–CV–14203, 2013 WL 210735, at *7 (E.D. Mich. Jan. 18, 2013); *cf. United States v. Salinas*, No. CRIM. 04-0159-WS; Civ. 06-0043-WS, 2006 WL 314453, at *4 n.5 (S.D. Ala. Feb. 9, 2006) ("From the record before the Court, it appears that any potential claims Salinas could have presented on direct appeal would have been extraordinarily weak, ***and she has not identified in these § 2255 proceedings any possible grounds for appeal that would have stood a reasonable likelihood of success***. Thus, while Salinas is undoubtedly correct that her lawyer is not clairvoyant, it was neither deceptive nor otherwise ineffective assistance for him to apprise petitioner of his assessment that a direct appeal was likely to fail.") (emphasis added).

Further, contrary to Hines's apparent belief, "[a] hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court."  *Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997) (citing *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989)).

## II.     Ground Three: Knowing, Intelligent, and Voluntary Guilty Plea.

Hines repeats arguments made above, in the context of ineffective assistance, averring, specifically:

> [He] was not receiving his prescribed psychotropic medications at the time he conferred with counsel.  Counsel is noted as threatening petitioner with withdrawing from the case [and other means of "passive coercion"] to coerce[ the] petitioner to agree to plead guilty.  Counsel advised petitioner that by pleading guilty he would receive a lesser sentence of not

more than 300 months incarceration.  Counsel mis-led [sic]  petitioner by representing facts and using fraudulent statements and illustrating a strong conviction of truthfully helping petitioner, who received 562 months almost double the alleged maximum sentence counsel advised he could receive.

(Doc. 53 at 29.)

These arguments, made outside the prism of ineffective assistance of counsel, were not presented on direct appeal and, as such, they cannot be made on collateral attack.  *See Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.")

Although procedural default can be excused if a petitioner can show "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error[,]" *Lynn*, 365 F.3d at 1234 (emphasis omitted), Hines has failed to make such a showing in his petition.   "Ineffective assistance of counsel[,]" which Hines has attempted to show, however, "may constitute cause to excuse procedural default[,]" *DiPietro v. United States*, 251 Fed. App'x 606, 608 (11th Cir. Oct. 15, 2007) (per curiam) (citing *Eagle v. Linahan*, 279 F.3d 926, 937 (11th Cir. 2001)), and "[a] defendant may avoid the need to show cause and prejudice on a procedurally defaulted claim by raising a substantive issue of ineffective assistance of counsel for failure to assert the claim[,]" *id.* (citing *Eagle*, 279 F.3d at 938); *see, e.g., Beasley v. United States*, Nos. CV610–066; CR607– 008, 2010 WL 4777535, at *1 (S.D. Ga. Oct. 28, 2010) ("It is well established that 'constitutionally "[i]neffective assistance of counsel . . .  is cause"' for excusing a procedural default.") (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)), *report & recommendation adopted*, 2010 WL 4739525 (S.D. Ga. Nov. 16, 2010).

Merely asserting a substantive claim of ineffective assistance of counsel does not "establish[] cause to excuse [ ] procedural default"; "*in order to constitute cause, ineffective assistance claims must have merit*."  *Reynolds v. United States*, Nos. CV 109-061; CR 106-081, 2010 WL 1006257, at *4 (S.D. Ga. Jan. 26, 2010) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)) (emphasis added), *report & recommendation adopted*, 2010 WL 1006253 (S.D. Ga. Mar 17, 2010).  And, as explained at length in this recommendation, Hines has failed to make a meritorious substantive claim for ineffective assistance of counsel.  Accordingly, Hines has defaulted on this ground.

### III.   Ground Four: Actual Innocence.

Finally, Hines argues for actual innocence: "This case presents a true miscarriage of justice because [he] is serving a 562[-]month sentence which was mis-advised [sic] by counsel, and [he] is suffering from a mental illness which causes delusional thinking."[12] (Doc. 53 at 30.)

The actual innocence exception is "exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence."  *Lynn*, 365 F.3d at 1235 n.18 (quoting *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001)) (citations omitted).  "'[A]ctual innocence' means *factual* innocence, *not mere legal* innocence."  *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623, (1998)) (emphasis added).  And, if Hines had a freestanding innocence claim, this habeas petition is not the correct vehicle in which to assert it.  The Eleventh Circuit's "precedent does not allow habeas relief on

---

[12]       As to his "substantially reduced mental capacity," Hines further provides that it could be "caused by mental illness, mental defect, intoxication by either alcohol or drugs, or another cause[,]" and that the Court "must consider what effect this diminished capacity had on [his] ability to form any specific mental state"—an "essential element of the accused offense." (*Id.* at 31.)  For the sake of completeness, Hines also states that he "has experienced perceptual disturbances and [has] exhibit[ed] moderate to severe symptoms of both a depressive disorder and a thinking disorder at the present time."  (*Id.*)

a freestanding innocence claim in non-capital cases," such as this one.   *Cunningham v. District Attorney's Office for Escambia County*, 592 F.3d 1237, 1272 (11th Cir. 2010) (citing *Jordan v. Secretary, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007)); *compare* Doc. 53 at 30 (Hines "is actually innocent of the criminal offense supporting the instant conviction . . . ."), *with, e.g., Jones v. Thomas*, No. 5:09–cv–155–AKK–TMP, 2012 WL 5265771, at *34 (N.D. Ala. May 08, 2012) (§ 2254) ("In the instant non-capital case, petitioner's claim of newly discovered evidence of his actual innocence simply does not state a claim for federal habeas relief under Eleventh Circuit precedent.  Petitioner does not make the argument that his actual innocence opens a gateway for consideration of another claim; rather, he is quite clear that he argues this evidence proves that he is innocent of the murder of Howard Alexander and should be granted relief on that basis alone. Eleventh Circuit law simply does not recognize a freestanding claim of innocence as a ground for habeas relief."), *report & recommendation adopted*, 2012 WL 5265767 (N.D. Ala. Oct. 22, 2012).  This ground for habeas relief is therefore denied.

## IV.   Certificate of Appealability.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied.  28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Because all the non-ineffective-assistance-of-counsel claims are procedurally barred, Hines is not entitled to a certificate of appealability on those claims. Where, as is the case for the non-ineffective-assistance-of-counsel claims presented here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as unexcused procedurally defaulted claims are barred from a § 2255 proceeding, *see Lynn*, 365 F.3d at 1234, a reasonable jurist could not conclude either that this Court is in error in dismissing those claims in the instant petition or that Hines should be allowed to proceed further on those claims. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that Hines should be allowed to proceed further.").

Hines, similarly, is not entitled to a certificate of appealability on his ineffective-assistance-of-counsel claims. Where, as is the case for Hines's ineffective-assistance-of-counsel claims here, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when Hines demonstrates "that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong[,]" *Slack*, 529 U.S. at 484; *see also id.* at 483–84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'").  With respect to Hines's ineffective-assistance-of-counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issue presented is adequate to deserve encouragement to proceed further.  Accordingly, petitioner is not entitled to a certificate of appealability as to this claim.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g., Brightwell v. Patterson*, No. CA 11–0165–WS–C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011) (the Eleventh Circuit (Hull, J.) subsequently denied the petitioner's motion for certificate of appealability on October 11, 2011 (*see* Doc. 14 in CA 11–0165–WS–C)); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

<u>Conclusion</u>

Because the Magistrate Judge is of the opinion that (1) the petitioner's various claims for ineffective-assistance-of-counsel (Grounds I and II) fail because he has not

shown that his rights were violated, and (2) the non-ineffective-assistance-of-counsel claims presented in the motion (Grounds III and IV) are procedurally unavailable, it is **RECOMMENDED** that the motion (Doc. 53) be **DENIED**.

The Magistrate Judge **FURTHER RECOMMENDS** that the Court find that the petitioner is not entitled to a certificate of appealability and, therefore, is not entitled to appeal *in forma pauperis*.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 12th day of March, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

**1.      *Objection.*** Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).[1]  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[2] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

**2.      *Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[1]      All Fifth Circuit Unit B decisions from any date are binding precedent in the Eleventh Circuit.  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

[2]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED. R. CIV. P. 72(b)(2).